Good morning, and may it please the Court. I'm John Klein, and I represent Mr. Boulware. In March of last year, the Supreme Court rejected the contemporaneous intent rule that this Court applied on Mr. Boulware's second appeal following Miller and remanded to this case. On remand, we believe there are two issues before the Court. The first is whether Mr. Boulware presented sufficient evidence on the with respect to it stock issue to get a jury instruction. The answer to that question, in our view, is yes. The threshold is a very low one under cases such as Kaser, and there is ample evidence from which a jury could have concluded that this distribution or these distributions were with respect to Mr. Boulware's stock. The second issue is whether Mr. Boulware's alleged embezzlement of this money from HIE precludes him from asserting a return of capital defense. The answer to that question is no. I'll discuss that in a little more detail, but I think it's noteworthy at the start that the position the government is taking here, namely that a controlling shareholder can embezzle from his own corporation, is a novel one. It is contrary to the position that the government has taken in the tax court for many years. Let me first talk about the with respect to its stock issue. And I think it is helpful to understand procedurally that this issue really never came up in the district court at all. It was not the focus of the debate there. The focus of the debate and the sole focus of the district court was the Miller contemporaneous intent requirement. Nor did the government raise the with respect to its stock issue before this Court the last time we were here as a basis for affirming Mr. Boulware's conviction. Again, the sole issue before this Court was the Miller contemporaneous intent requirement. The counsel, the with respect to stock issue is an element of the defense that was raised, is it not? It is a, as the Supreme Court described it, it is one of the threshold requirements for there to be a return of capital. That's correct. So that element needed to be satisfied in the district court level, correct? Mr. Boulware needed to produce some evidence on it. What happened, though, because even before trial, the sole focus was on this contemporaneous intent requirement. None of the other elements of this defense, and by the way, I use the word defense somewhat loosely. This negates an element of the offense. It's not a true affirmative defense. So if I refer to it as a defense, I mean it only in that sense. But the sole focus from before trial through the end of trial and for that matter through the proceedings before this panel was on the Miller contemporaneous intent requirement. So some of these other issues were not fleshed out as much as they would have been had they been at issue in the district court. Having said that, the with respect to its stock threshold is a very low one. That phrase in the statute, as the legislative history shows, as the cases show, including the bond case from this court, as the regulation shows that the IRS has adopted to implement that phrase, what that phrase does is distinguish distributions that a shareholder receives in his capacity as a shareholder from distributions that he receives in some other legal capacity. For example, it is often the case that shareholders, especially in closely held corporations, are employees. Mr. Boulware, in fact, was an employee of HIE, and he received a salary as an employee in his capacity as an employee. That salary was reported on his individual income tax return year after year after year. It went from relatively modest to quite substantial. The purpose of the with respect to its stock language is to distinguish money that a shareholder receives in some other legal capacity, like an employee or a creditor, from money that he receives without consideration, simply by virtue of the fact that he is a shareholder. That's the meaning of that phrase. There's no more significance to it. And in the vast majority of cases involving controlling shareholders of close corporations, including this case, until we got to the in-bank part of the case, it's never an issue. And the theory is, is that the shareholder is receiving a return of his capital. Right. The investment that he made as a shareholder. Well, the language with respect to its stock appears at the top of Section 301, and then it's like the gateway into Section 301. Then as you go down, distributions to a shareholder can have various tax significance depending on certain things. For example, if the corporation has earnings and profits, then it's going to be a dividend, and that's taxable to the shareholder. But the non-taxable would be a return of capital. Yes, yes. So for it to be non-taxable, for this defense to hold water, it would have to be equal to or less than the amount of the investment by the shareholder. That's the basis issue. That's correct. Okay. And where is the proffer sufficient or the evidence induced at trial sufficient to show that he had any basis in the stock? The evidence on the ---- I mean, let me say this first, and I'll get right to your question. This issue was, again, it was not raised in the district court on ---- it was not raised on appeal in the Supreme Court. The government acknowledged that it had not ---- did not contest the adequacy of the proffer on basis. This issue, the basis issue, has come up as a reason for affirmance. Really, for ---- it was mentioned in the opposition to petition for rehearing. It was conceded before the Supreme Court, as the Supreme Court notes, I think, at footnote 14. Well, it wasn't argued. I beg your pardon? It wasn't argued. And the government acknowledged that it had not challenged the adequacy of that proffer at any point in the proceedings. I understand that. Having said that, the evidence of basis is, in the record as it stands now, is, for example, at volume 5, pages 17 through 20, Mr. Sid Boulware, who is the brother of Mike Boulware, the appellant here, testifies that he has ---- Mr. Michael Boulware established a bottled water business and a coffee business. As I look at it, it's sort of an ---- I looked at the sites that you gave in the brief, and I didn't actually add them up, but eyeballing it looks to me to perhaps, perhaps, get up to about $5 million. Well, no, I think it gets beyond that, because he also, for example, gave coffee. Well, $600,000 for one thing, a couple of million maybe value on a couple of the other businesses. So I'm saying if you add up all of the numbers that are referred to, you don't come anywhere close to $10 million, which is more or less what you've got to do. Two responses to that, Your Honor. One is that there are other arguments about basis. For example, the money that Mr. Boulware used to buy out his wife's interest, which was about $3.5 million. Now, this was never, there was never a legal argument in the district court about whether that constitutes basis, because, again, the issue simply never came up. But there is evidence in the record that Mr. Boulware used the money that he had, essentially, that his wife wanted a divorce. She claimed a 50% interest in the corporation, and he bought out her interest for something on the order of $3.5 million or $4 million. There is an argument that that payment to his wife increased his basis in the corporation. Again, this issue- I'm sorry, counsel. How would it do that? Because Mr. Boulware is taking his own money and- Giving it to his wife. Giving it to his wife, and in return, the stock comes back into the corporation, and the stock now has that basis attached to it. All I can tell you, Your Honor, is that had this issue been raised and were it to be raised, again, where basis was an issue, that money, there is a credible argument that that money can be counted toward basis. I can't tell you for sure that it would succeed with the jury, but I can tell you that that is an argument that would be made. Can you identify any other monies in the record besides this $3.5 million? That's not already referred to. There's the water business, which was valued in the record. There was several different values given to it, but I think the highest of them was $2.1 or $2.2 million. There was the coffee processing and wholesaling business, which was a value was placed on that in the record. Again, the highest of the various values was $2.8 million. There was Mr. Boulware spending $600,000 a year for coffee, which came to about $2 million over three years. And I think if you were to extrapolate that over all the years that we're talking about, it would be considerably more than $2 million. There's the money used to buy out his wife's interest. Again, I think had this issue been fleshed out in the district court, had this been something that was contested in the district court, there wouldn't have been much question that Mr. Boulware could make out a $10 million basis in this stock. Now, a second issue, a second point I wanted to make in response to that. Why does that matter now? I beg your pardon? Why does that matter now? Isn't, aren't we judging the sufficiency of the proffer? And regardless of what was argued before, and I can accept your argument that this wasn't the focus of this district court, either in the respect of stock issue or the basis issue. But why weren't you required to make a sufficient prima facie proffer at the time? And don't we judge that on the basis of the record now? In general, your honor, yes. And I think there is enough evidence in the basis given the low teaser standards in which a jury could infer that Mr. Boulware had the requisite amount of basis. I think, though, that it's, it is a bit unfair to hold Mr. Boulware too strictly to that requirement under these circumstances, where it is, it is truly the case that before trial, for example, Mr. Boulware requested a return of capital jury instruction. Before trial, the government filed an opposition to that, which, which raised the Miller contemporaneous intent issue. The government moved to preclude evidence of return of capital, and, and several days into the trial. The sole issue that the government raised was a contemporaneous intent issue. When the court, the district court addressed the issue, the sole issue that the district court addressed was contemporaneous intent. There, there was, because this was the, the, the sole and only focus starting before trial. I think it is understandable that the lawyers didn't spend a lot, and by the way, since the district court did ultimately preclude evidence on this issue, I think it's understandable that the trial lawyers did not develop the record on this as fully as they might have had it been a contested issue. I understand all that. I'm, I'm just saying, isn't our task now to, even though your position is entirely understandable and the reaction is understandable, but isn't our task to look technically at the proffer and decide whether that's enough on the basis of this record? Well, no, it's a short answer. I think, I don't think that there is, that there is such a, that the court necessarily has to take such a narrow focus. I, I would also say this, that if we're talking about, in effect, defaulting Mr. Boulware, finding that he, his lawyers failed in the district court to present evidence that, that was there, that could have been presented, I think, I think we have to look as well at the question of whether the government should be permitted to raise this issue as an alternate basis for affirmance at this stage of the proceedings. There are cases from this court, I can cite a couple, US versus Lewis, 787 F 2nd 1318. GIEG, G-I-E-G versus D-R-R Inc, 407 F 3rd 1038. Where this court has, has refused to let an appellee, which the government is here, raise an alternate ground for affirmance where it wasn't raised in the district court, where it wasn't raised before the court of appeals. I, I think it would be extraordinarily unfair to hold Mr. Boulware to a very exacting standard on this question of proffer, and at the same time allow the government to prevail here on an issue that it raised for the first time as a basis for affirmance in its opposition to the petition for rehearing. I, I think that would. Even so, to this day, now you, the only other suggestion that you have advanced is money that he gave to his wife. And I think if you add those numbers together, you will come fairly readily to the $10 million. The second point I wanted to make, Your Honor, earlier, which I, which I never quite got out, was for this to be, the, the government's theory at trial was that there were various kinds of money that Mr. Boulware had received in various ways over the years that he didn't report. It wasn't just like he got $10 million one day and he didn't report it. There was a couple million dollars here, a couple million dollars there, and so on. It is entirely possible, because the jury was never asked to, there was no special verdict here. They weren't asked, was this income, was that income, was this income, was that income? They just rendered a general verdict. It is entirely possible that the jury accepted Mr. Boulware's defense as to some of this money. For example, some of the money he gave to his then-girlfriend to hold, he, he claimed, in trust for the company. There was a state court judgment adopting that view. There was a state court judgment that was admitted into evidence which said that that is exactly what happened, that the money was always HIE's money. The jury could well have believed that, and that would have knocked out four and a half, I think about four and a half million dollars of the money we're talking about here. Then Mr. Boulware would have been dealing with a much smaller amount of income that he had to, alleged income, that he had to explain to the jury. So even if he, if he didn't get to the, to the top of the heap on basis, even if he couldn't quite make the $10 million, let's suppose there was $500,000 or even a million dollars that he couldn't account for, and that would therefore be a capital gain to him under the, under the 301 and 316. That still could well have led to a different result in this case. If he could get rid of $9 million of the $10 million and only be left explaining a million of it, that could well have made a difference in this case, given that the money, each little tranche of alleged income had a different story behind it and to some extent a different defense attached to it once the return of capital was wiped out. So I don't think it's necessary to reverse here for him to account for every single opinion. I think he can. I think his basis is sufficient, but I don't think it's necessary to, to reverse his conviction here. I'm, I'm, I'm happy to continue talking about with respect to its stock or the embezzlement issue. I gather that the Court has some very specific concerns here, and I'd rather address those if, if, if there are further questions. But otherwise, I'll just return to my, return to my argument. Well, just, just to be clear, the, the only evidence in the record with respect to his, that this being with respect to stock is the, the, the fact that he is a shareholder and the expert testimony that was proffered, that that essentially may have been the purpose of the $10 million payment, is that correct? No, Your Honor. In the expert testimony, I would largely discount. That, that was, I think, an effort to, an unsuccessful effort to try to meet the Miller standard once it, once it became clear that that's what the district court was going to require. The evidence in the record that is sufficient on the, with respect to its stock issue is that, first of all, he was the controlling shareholder of HIE, and second, that he received a salary as an employee, because there was evidence that he was an employee, and that the money that he received as salary was reported on his tax returns and, therefore, was not this money that, that we were talking about. That evidence is sufficient under pretty much every tax case that's, that's out there in dealing with this fact situation to get over the with respect to its stock hurdle. There was something that was Why is that so? I mean, in the first trial, you, in the first trial, your client asserted that this was all a loan from the corporation, and that the facts that you have posited would fit that scenario as well. So, why is that enough to say, I'm a shareholder, I receive money, and, therefore, the in respect to stock requirement is satisfied? Well, in fact, your honor, you're correct. Mr. Bulware asserted alternative defenses here, and in particular, once the return of capital defense was, was going to be ruled out, as it pretty clearly was almost from the beginning, he did assert alternative defenses. One of his defenses was that this was never a distribution to him at all. It was, it was corporate money that he was holding for the corporation. Another defense was, as to at least some of the money, that it was either a loan that he made to the corporation that was being repaid, or a loan to him by the corporation that he was then liable to repay. There's no question that he made those arguments. The jury rejected them. So. Right, but I, but I, but your central argument is it's enough to show a causal nexus with the stock to show that he's a shareholder and received money. And yet, you asserted alternative theories, and you're entitled to do that, that would not have any connection with the stock at all, or virtually no connection. So, the question is, why is that enough of a tender to satisfy the requirement? Because the, the cases and the purpose of that requirement don't require more. What, what they require, in effect, is that, that the money go to the shareholder, and that it not go to the shareholder in some other capacity. Now, Mr. Boulware certainly, as an alternative defense, argued that it, some of this money, at least, had come to him. It either never came to him at all, in a sense, it remained corporate money, or it came to him in a different capacity. But the jury rejected those arguments, and in any case, he was entitled to present alternative defenses. And if, if you conclude that this money, that he was a shareholder, that it was not salaried, because the salary was separately accounted for on his tax returns, and that there was no evidence of any other capacity in which the money came to him, that is enough. There was something that I, I, I noticed preparing for this argument. It's not cited in my, in my brief, but I noticed it just, just within the last day. The Supreme Court, in its opinion, cites to a, a memorandum that the, I think the IRS Deputy Chief Counsel wrote to a, one of the directors in the Truesdell case. The Truesdell case comes out in 1987, I believe, and then there's a question whether the IRS is going to acquiesce in that, and there was some debate within the IRS. And in writing about, in this memorandum, which is, it is 1989, Westlaw 1172952. And the Supreme Court cites it a couple of times in its opinion in this case. The, the Chief, Deputy Chief Counsel says, in Truesdell, the commissioner did not contend the diverted funds were additional salary, illicit bonuses, commissions, or other diversions attributable to his, that would be Truesdell's, employee status. Therefore, since the diversions did not relate to his employee status, it is reasonable to conclude they related to his shareholder status or were made with respect to his stock. We do not consider it arguable that Mr. Truesdell acted in his status as an individual since his ability to obtain corporate funds grew out of one of his positions as a corporate insider. He received the funds as a corporate insider and he diverted them to his own use as a corporate insider. If he was not acting as an employee, he was acting as a shareholder. And that's the same situation here. The counsel, is there a shred of evidence that affirmatively indicates that that was in fact what he received the distribution for? Yes. The fact that he was a shareholder and he controlled the corporation and he didn't get it in some other capacity. That is the evidence that court after court after court in the civil tax arena relies on. There typically is no other affirmative evidence. I don't know of a case, Your Honor. And let me back up a second. There are a million of these constructive dividend cases. Usually it's the IRS that's in tax court arguing that a particular payment was a constructive dividend and not something else. The taxpayer is usually trying to say that it was a loan or it was salary or something like that because then the corporation gets a deduction. And the IRS is always arguing it's a constructive dividend because typically they're earning some profits. And so then it's taxable, both to the corporation and to the individual. And so there are a million of these cases out there. That's an exaggeration, but there are a lot of them. And in the cases, the question is always, did the taxpayer get the money in some other capacity as an employee, for example, as a creditor? Or did the taxpayer get this in his capacity as a shareholder? And I have not seen a case that requires more evidence than what I've just described to you to satisfy the with respect to a stock issue. That issue, I have not seen a case where that issue has been even significantly debated, where the circumstances are like this, where there's not a, where there's not proof that the money came to the shareholder in some other capacity. I see that. Unless Judge Thomas has anything further at the moment, your time is way expired, and I'll let you respond briefly. If I could. Thank you. Judge Romer, would you mind pulling your microphone a little closer? I can't hear you very well. Thank you. May it please the Court. My name is Robert Lyons. I'm appearing on behalf of the United States. I did not handle the first appeal. I first became involved in this case with the opposition to the petition for en banc re-hearing. I was involved in the Supreme Court case. I think at the end of his argument, counsel has hit the nail on the head as to one of the issues presented to this court. The defendant is relying on a theory of constructive return of capital. He says that because the government gets to argue in cases a constructive distribution with respect to stock theory, that the defendant as well gets to argue a constructive distribution with respect to stock because he is a controlling shareholder. It is our position, as stated in our brief, that a defendant, a tax payer, let's take it out of the litigation context first, the criminal context, that a tax payer is bound to the form of the transaction that he chose and cannot retroactively change the tax consequences of his transaction. In this case, I don't think there's any serious debate that the diversions that occurred here were not affected with an attempt that they be a distribution with respect to stock. They were, in fact, intended to be hidden diversions that were never reported as taxable income. After the fact, the defendant is arguing that these are constructive dividends, excuse me, constructive distributions with respect to stock and because of the number crunching end up being returns of capital. As we state in our brief, it is the government's position that the constructive dividend theory, and to be more precise, the constructive with respect to stock theory, belongs to the government and cannot be invoked by the defendant, by the tax payer, because under the case law that we cite, including the Supreme Court case, the tax payer is bound to the form of the transaction that he chose. And to put it in... Well, how do you know that in a closely held corporation until the end of the tax year? There's no requirement of formally declaring dividends. And whether it's a return of capital or a distribution of a dividend won't be known until you know what the earnings are at the end of the year. So why isn't a tax payer entitled to assert that theory as to the amount of taxes that the tax payer owes? And to put it in the wording of the Supreme Court case, when does the defendant or the tax payer have to exhibit an intent that it be a distribution with respect to stock? And given the Supreme Court's holding, we're not going to require them to show that it was intended to be a return of capital because that's a number crunching process. But it has to be a distribution with respect to stock. Well, if Mr. Boulware had proffered evidence that at the end of the fiscal year of his corporation, that there had been any evidence that this was intended to be a distribution with respect to stock, he should have proffered it. In fact, his own controller testified that there had been no returns of capital paid. His own controller. That's the evidence in the record. Now, with regard to the fact that on the date that the diversions occur, you're correct, Your Honor. We have to wait to the end of the fiscal year. But criminal trials- But you seem to be implying a requirement that there be a contemporaneous declaration of what this distribution is or the tax payer can't assert the defense. And I think that, especially in light of the Supreme Court opinion, is not correct. Contemporaneous, not as of the date of the diversion. Contemporaneous, if you want to, I don't know if that's a good use of the word, around the time of the end of the fiscal year. I mean, if he had diverted, and at the end of the fiscal year reconsidered his intent to commit this fraud and said, okay, I took the money and I've changed my mind. I'm not going to commit a crime. I'm going to report it properly as a dividend. At that point, there would be no crime because it is determined at the end of the fiscal year. But he did not do that, nor did he- I understand your argument under the facts of this case. I'm responding to your argument that the tax payer is prohibited from asserting this claim, but the government can. And it doesn't strike me as that's a legitimate argument. You're arguing as a matter of law, the tax payer is prohibited from making an argument about a constructive dividend. Well, no, but the constructive aspect comes, is that, let me first explain what the constructive dividend rules are, is that the tax payer, for example, receives excess compensation. And it is, in fact, paid to the tax payer by the corporation with the intent by everybody that it be compensation. But there's a factual determination, typically this is made in the tax court, that the compensation is excessive and thus not for a compensatory purpose. The government gets to argue that that is a constructive distribution with respect to stock ending up being a dividend. What the defendant is arguing, he is, I would submit, I've not been able to find cases where the tax payer defendant is allowed to invoke a constructive, you know, the return of capital argument, a constructive with respect to stock argument. All of the cases that the defendant has cited are cases where the government is part of an equitable argument, as part of its ability to look through to the form, through the form to the substance of the transaction, to make a constructive dividend argument. But we cite these cases in our brief, including Supreme Court, where the defendant tax payer doesn't get to do that. The defendant tax payer, having chosen the form and substance of his own transaction, must live with the tax consequences of the form and substance he chose, even though the tax consequences are not as he thought they would be. For example, if Mr. Boulware's actions had never been discovered, would he have self-reported these as returns capital? Likely not. Only because he has caught, does he want to retroactively say, oh, I could have, if I wanted to, made these bona fide distributions with respect to stock. And the argument is, show us some proffer that that is what you intended. But he did not. This theory for the return of capital was one of many made by the defendant. It was not the, you know, his primary argument, as I understand it, you know, even before the return of capital argument was rejected, was that these were corporate funds he held as an agent and was spending for corporate purposes. And, you know, I think if you look at the proffer, which is document 438, you'll see that. Now, listening to counsel's argument, I think he's backed away from the proffer because it relies so much on, you know, the proffering of expert testimony. But nonetheless, I do agree with the court's inquiry that the defendant has the burden to establish the prima facie case, all the elements, if he wants to raise this issue. And in July 9 of, received by the court on July 10 of 2008, we cited to this court Valsquez, Landover, Landover, 527F3rd, 798. And in that, the district court that was held did not err in excluding evidence or declined to give a jury instruction where the, quote, the defendant's proffer failed to make a prima facie showing of the required elements of the asserted defense. Now, defense counsel had, you know, positioned was that had to do with affirmative defense. And that is true, but I don't think that matters for our purposes of discussion, is that if you want to bring in evidence, you have to make it pertinent. It has to be relevant. And if he wants to bring in this evidence, he has to make a showing, a prima facie showing of the requirements for the, for the defense. Now, getting to the basis argument, unless the court wanted further discussion with respect to stock, I'll go to the basis. Now, the defense initially argued that we had, quote, waived the basis argument. And we strongly object to that characterization. If you, I don't know if you. I'm sorry, Your Honor. We're going to be addressing. It was first addressed. No, when did you, when did you? Yeah. In the opposition. There's a bit of a time gap. The opposition's petition for en banc for hearing. And I don't know if the Supreme Court briefs are available to the court. They're on Westlaw attached to the opinion itself. But you'll see at the footnote, the government says in the footnote, 11, we don't admit that it's correct. You know, we say that the proffer was insufficient not only as to the respect to stock requirement, but also to the basis evidence. And what the Supreme Court said in its opinion was, well, that's not before us because the government's not making that argument. The court, the Supreme Court has remanded to this court the factual determinations for the sufficiency of the proffer. I mean, after all, this court was directed to examine the with respect to stock requirement, and that wasn't argued before. So I don't think you can say, I mean, if the defense counsel's argument is correct, the Supreme Court was wrong to say that this court should examine the with respect to stock argument because that wasn't made before. What the Supreme Court said in its opinion was Miller shut down all discussion of all the other requirements for the proffer. And it said, and the court said, now that we've taken that away, we want this court to examine all of the prerequisites for the proffer. And one of those is the basis. And what do you make of Justice Souter's comment in footnote 12? Nor does the government dispute that Bulwer offered sufficient evidence of his basis and HIE's lack of earnings and profits. I think, like I said, I don't know if the court's, the briefs filed by the parties in the Supreme Court or, you know, have been read by the court, whether they were made available. But if you read that in the context of what the government said at footnote 11, basically is the government is not raising in this court this issue. Now, the Supreme Court doesn't decide. Are we supposed to say the Supreme Court was wrong in its characterization of your concession? No. That's a bit of a leap for us to say. Well, it's not, it wasn't a concession in this court. It was the not making a factual argument in the Supreme Court because there was this legal issue, this legal inconsistency between the Second Circuit's, the Agostino case and this Court's Miller case. That's what the court decided. Judge Thomas, the point I want to make to you is, if our failure to, I don't think that it's inconsistent with the footnote to state that the basis is not waived in this court. The basis argument was not made in the Supreme Court, but that does not prevent this Court from reexamining the factual record as this Court said expressly with regard to the respective stock argument. Well, it's difficult, too, because that wasn't the objection made in the district court. And I think Mr. Boulware does have some basis for saying, look, if the government had contested basis in the district court and presented that to Judge Graffiti, we would have produced evidence of basis. So we take the fact that it wasn't for, wasn't made, the objection wasn't made in the district court. We take Justice Souter's comment that the government doesn't dispute basis. It does become a little late in the game now to look back and fault Mr. Boulware's tender as being insufficient because he didn't make a tender of his basis, of the amount of his basis. I would, I would, flip of the coin, I would say the government doesn't get to go to this Court and say that our failure to prove an element of an offense is excused because we thought the defendant didn't, a trial didn't contest it. I mean, the government has to meet a prima facie burden in its offense to establish the offense. The defendant, to bring in his ---- But you never argued at any point that that element was not satisfied, did you? In fact, as the Supreme Court pointed out, you essentially conceded that point. Right. But, but, again, looking at the proffer. Again, at this point, we're examining was the proffer sufficient. This Court may affirm on any ground sufficient in the record. And in this record, the proffer is legally insufficient. And to establish, the defendant has this burden to establish a prima facie case, whether he thinks the government's going to contest it or not. He has to make a showing to the Court. The pleading is between the defendant and the Court. The pleading's not between the government and the defendant. The defendant has to hand up to the Court a proffer that meets the requirements for establishment of the defense. That's our position. Since this was not flushed out on the district court level, now we're faced with an exceeding the $10 million. Why should we not send this back to a district court to flush out what was not developed before the district court, namely what the basis was? Leaving aside the infirmity with respect to the stock element and focusing solely on the basis, is that this after the, I mean, there was no discussion by the defendant that these added up to $10 million. I mean, he. We have that now, so. Right. But I think you look at this record and you say, you know, this is just, you know, argument. You look at that. You look at the record. What is in the record? $6 million maybe. It doesn't add up. So, I mean, this is, you know, until today or until the remand brief, the defendant had never argued that he had $10 million in basis. And, I mean, and the number actually never even came up until the remand brief. And he didn't even put a number on it. He did argue at one point that it was a loan and he paid back $6 million of it. So if we're down to $4 million that's at stake, then that becomes a different issue, a closer question on basis. I'm not saying whether it's true or not. I'm just saying that's what we said in Billware 1 that the evidence showed in that case. Well, I mean, you know, the repayment of a loan doesn't give you basis in your stock. No, I mean, it has nothing to do with it whatsoever. But, I mean, then if part of it's a loan and he paid back, let's assume for the sake of argument, he gets a $10 million, what he characterized as a loan. He pays back $6 million. The rest of it's unexplained. That's the distribution of corporate assets. Well, then it's a closer question on basis than it would be before. I mean, obviously, if you just take it in a pure question on this record, I don't think he comes close to establishing basis. But, you know, it's a little more complicated than that. I think the more straightforward argument is perhaps is that they have not satisfied the respect to stock requirement. Now, their argument is that a controlling shareholder, there's a presumption that is with respect to stock. Again, I'll go back to one of the examples that the defense put in their Supreme Court marriage brief. They said if a shareholder of General Motors steals funds from General Motors, that's not a distribution with respect to stock. That's embezzlement, they say. And, you know, so they agree with that. That is not a distribution with respect to stock. It's not an automatic. Just because a shareholder gets funds from a corporation for his personal benefit, that is not a distribution with respect to stock. Now, I will point out that is slightly different than the argument that they made to this Court earlier on when they were asking this Court to fully adopt D'Agostino, which D'Agostino's rule was if it goes to a shareholder, it's automatically a distribution with respect to stock. They don't make that argument asking this Court, and they didn't actually ask the Supreme Court either. They changed that argument, to fully adopt D'Agostino's argument in that regard. And that's what D'Agostino appears to hold, is that if it goes to a shareholder, it automatically is a distribution with respect to stock. And that's what we strongly disagreed with and that we were trying to upturn in the Supreme Court. Now, going from their General Motors example, they say, well, it is automatically a distribution with respect to stock. If you're a controlling shareholder, unless the shareholder wants to make it something else. And he says, I didn't try to make it anything else. So. Right. Well, you both changed your positions in the course of this litigation. I mean, when you argued with one of your colleagues argued Buller won, the government's position then was, we don't need to show what the character of the diversion is. And, of course, that's opposite of what you're arguing today. In fact, the character of the diversion is what's at issue. So, I mean, I think what's on the table now. What's on the table now is I think this Court can directly hold that the proffer was insufficient, that this was a distribution with respect to stock. I would urge this Court to reject the defendant's argument that he can rely on a constructive respect-to-stock theory in reliance on the constructive dividend theory that is available to the government. I mean, I. How do you finish your sentence? We can hold that the proffer was insufficient to show a distribution with respect to stock because.  I mean, there's no. Okay. Continue. With respect to stock. Because in reliance on that, they are arguing that they get to rely on the constructive dividend cases in which the government asserts the theory. Right. And they don't get to make the argument. Okay. What case says they can't do that? I am unaware of any single case. You've said that. What's the reasoning? The reasoning is it's an equitable theory available to the government where a taxpayer chooses the form and the substance of his transaction. And on our remand brief, I would look at page 12 is when we start getting to the Supreme Court cases where we hold the defendant to the form and substance of his transaction. But the constructive dividend. I agree with you so far. May I interrupt for just one second? I agree with you so far. And you're saying when the taxpayer chooses and elects in this tax return or the corporate tax return to characterize the form of the transaction, then the taxpayer is probably bound by that. But here and in other cases, he just took the money. He didn't characterize it one way or the other. And in cases in which the taxpayer has not characterized the transaction, I don't understand why the taxpayer doesn't get to argue about the form of the transaction or how it ought to be characterized later. And I don't think there's a case that says the taxpayer is precluded from raising that defense. The taxpayer is there? Well, there's none where the defendant has been allowed to rely on the constructive dividend. I said prohibited. Your argument is they can't. They're prohibited from raising it. Is there a case? There – yes. Well, in a more generalized way, I mean, National Alfalfa and the cases that we cite are the Supreme Court holding that the taxpayer must accept the tax consequences of how he organized his affairs. Mr. Boulware organized his affairs as a fraudulent transaction. There is concealment here. There's deceit here. I don't think there's any disagreement that had the IRS not discovered this, it would not have ever been characterized as a return of capital. So the government relying on the Supreme Court cases say that Mr. Boulware, in form and substance, characterized his transaction as stealing. And if he wants to say that it was a redistribution of his – I don't recall him making that concession. I'm sorry? I don't recall him making that concession. That it was – that it was not – No, he didn't – he's not – I don't think he's ever said – admitted that he organized his affairs as embezzlement, theft, or stealing. In fact, he's always maintained to the contrary. I understand the theory that you ought to hold a taxpayer to the form of characterizing the transaction as he or she or it chooses. But when there's no characterization, I think the taxpayer probably is entitled to some freedom in attempting to argue how it ought to be characterized. And your argument seems to be, no, he's precluded from doing that. Only the government can argue about the – how it ought to be characterized. Am I misinterpreting what you're saying? I would disagree that the taxpayer has not characterized his transaction. He characterized it by not changing his corporate books to reflect the distribution with respect to stock at the conclusion of his fiscal year. Well, you're suggesting that he had an affirmative duty to characterize it. You seem to be conceding that he did not, in fact, characterize it. At the conclusion of his fiscal year, when honest taxpayers account for distributions with respect to stock that are either dividends, returns of capital, or capital gains, he did not do that. Is there any authority that supports your position? Well, I say it by the contrary. Again, not exactly, but here are the two lines of authority that support argue. One is, again, the Supreme Court case is holding the taxpayer to his form. Second is that the defense cannot, to my knowledge, has not cited a case where the defendant gets to rely on a constructive theory. All the cases cited are cases where it's the government. And after all, this is an equitable theory available to the government because it is trying to get to the economic substance of a transaction where taxpayers, through the form, try to make it appear what it's not supposed to be. So the defense is trying to take an equitable, constructive argument available to the government to do justice and use it as a sword to say, I, the evidence was that he could, and the jury convicted him on. Again, I don't think there's any. What's at issue here is whether there was a deficiency. The evidence at trial that he willfully attempted to evade tax can't be contested. I mean, the willfulness, he attempted to evade tax. The issue is, was there a tax deficiency? So when I say to Your Honor that there can't be any contest that he did this with fraudulent intent, that's what I rely on, the evidence that the jury must have found that he did this with willfulness, with the intent to evade his taxes. So he's trying to say, even though I intentionally did not report these with the intent to evade my taxes, I could, if I wanted to, recharacterize my fraud as a bona fide distribution with respect to stock, a constructive distribution with respect to stock. And our position is the constructive dividend theory belongs to the government, and that the taxpayers, this taxpayer, having organized his affairs as a fraud, as to evade the taxes, is bound by the form and substance of his transaction, which was fraud. Judge Thomas, do you have any further questions? No. Okay. Since you're way out of time, thank you, Mr. Lyons. Mr. Kline, I'd say you have about three or four minutes to equalize the time. Thank you, Your Honor. A couple of just quick points. First, the whole argument about form is contrary to this Court's decision in the Kaser case. The government made exactly the same argument, and this Court rejected it, I think on the basis of Judge Thomas's comments earlier. Kaser is 488 up third, I'm sorry, but it's cited in our briefs. Second point, counsel has argued here, I think for the first time, that a taxpayer,  In Truesdell itself, which is kind of a seminal case in this area, the tax court case, that's exactly what happens. I'm reading from the case. It's 89, Tax Court, at page 1294. It says, Petitioners, now that's the taxpayer in the tax court. Most cogent argument, however, is that the funds he diverted constitute constructive dividends to him, and therefore are taxable as income to him only to the extent of the earnings and profits of the corporations. And it goes on to accept that theory. So in the seminal case on this issue, the Truesdell case from the tax court, it was the Petitioner, the taxpayer, who invoked the constructive dividend rules and not the government. I'll certainly say it's the government that most often does it, but there's no case anywhere that says the taxpayer cannot, and Truesdell is to the contrary. I'd cite D'Agostino from the Second Circuit as well, where a defendant, a criminal Counsel's point is that there's no evidence at all that that is what Mr. Billward did, in fact. His argument, I believe, as I heard it, was that there was no evidence of a contemporaneous intent at the time that this be a distribution with respect to stock. And that has been rejected by the Supreme Court. Absolutely flatly rejected. Now, in a slightly different context, I'll say, but there is no requirement anywhere that there be a never mind the intent of it. Is there any evidence that it was treated? Treated at the time, I think? Treated at the time or at the end of the fiscal year. No. As a return of capital? Yeah. No. But there doesn't need to be. Because? Because that is the whole thrust of cases like Kaeser and I would say even the Supreme Court case in this case. The defendant has the ability, depending on the economic realities of the situation, the economic realities, in turn, depend upon earnings and profits and basis. Depending on those economic realities, the defendant has the ability under the law, under cases such as Kaeser, under the Supreme Court case in this case, to characterize the transaction to his advantage in accordance with the economic realities. And that's what we're talking about here. Just that and no more. The counsel talked about a presumption, that we're asking for some sort of a presumption that a distribution under these circumstances be considered with respect to stock. We're not talking about a presumption. We're talking about a permissible inference that a jury may draw. And there is no case anywhere. From the mere fact of being a controlling shareholder. Controlling shareholder and it not being a salary, because the salary, again, was separately accounted for on his tax returns. And, Your Honor, I can say from having looked at a lot of these cases, I don't know of any case anywhere that says that that is insufficient on with respect to stock. And there are many cases that treat just that type of showing as sufficient, as establishing that condition almost invariably without even finding it necessary to discuss it. The one other point, and then I'll stop because I think I've gone over my time, too. To present a prima facie case of this defense. That's language that is peculiar to affirmative defenses like duress. And that's the case that counsel cited. All we need to do here is present enough evidence to put the issue into play. And Kaser described it as weak, doubtful, unworthy of credibility. There are a whole series of adjectives describing essentially a very, very low threshold. Just enough to put the issue into play. And the reason it's different, the reason we don't have to present a prima facie case like you would with an affirmative defense is that this defense, and I'm putting that in quotes, negates an element of the offense. It is something that, like advice of counsel, for example, which negates intent. This is something that simply negates an element of the offense. And once you put it into play, the burden of persuasion is on the government to disprove it beyond a reasonable doubt. There is enough evidence here on the, with respect to stock issue, and I would add, I believe, on the basis issue, to put this issue into play and at least have it presented to the jury in the form of the jury instructions. Okay. Anything further? Judge Thomas? All right. Fine. Thank you. Thank you. Both of you very much again for appearing today and for your argument. And the matter just argued will be submitted. The Court will stand adjourned.
judges: Rymer, Thomas, Larson